UNITED STATES v. MORTON, Clerk of Court.

(Circuit Court of Appeals, Seventh Circuit. January 11, 1895.)

No. 182.

CLERK OF COURT—COMPENSATION.

Act March 3, 1891, creating the circuit courts of appeals, provides (section 2) that the salary of the clerk of the court shall be $3,000, and (section 9) "that the marshals, criers, clerks, bailiffs and messengers shall be allowed the same compensation for their respective services as are allowed for similar services in the existing circuit courts"; while Rev. St. § 823, provides that a clerk of the circuit court may retain out of the fees of his office, over and above office expenses, a sum not exceeding $3,500. *Held*, that a clerk of a circuit court of appeals, the fees of whose office for a year and a half amounted, over office expenses, to the sum of $371 only, was entitled to retain that amount for his own use, in addition to his salary.

Appeal from the District Court of the United States for the District of Indiana.

Suit by Oliver T. Morton, clerk of the United States court of appeals for the Seventh district, against the United States, for fees and compensation. Plaintiff obtained judgment. Defendant appeals.

This was a suit by the appellee, Morton, against the United States, brought under the act of March 3, 1887 (24 Stat. 506), conferring upon the district courts jurisdiction of such cases. The district court, as required by the statute, made a special finding of the facts, and stated its conclusion of law substantially as follows: (1) On the 16th day of June, 1891, the petitioner, Oliver T. Morton, was duly appointed clerk of the United States circuit court of appeals for the Seventh circuit, and on the same day accepted, and has ever since held, the office. (2) From the beginning of his term of office, as aforesaid, down to January 1, 1893, he received, by way of costs and fees as such clerk, over and above necessary clerk hire and incidental office expenses, which were paid out of the costs and fees earned and received dur-

ing said period, the sum of $371.20, and no more. (3) On January 28, 1893, he made his return, as required by law, to the secretary of the treasury of the United States, of all costs and fees collected by him prior to January 1, 1893, in which return he represented to the secretary of the treasury that the amount of costs and fees received by him during said period over and above necessary disbursements for clerk hire and incidental office expenses was in the amount of $371.20; and in said return he further represented and insisted that said amount of $371.20 was his own property, and not the property of the United States of America. (4) On April 3, 1893, A. C. Matthews, first comptroller of the treasury department of the United States, gave to said Morton a peremptory notice that said amount of $371.20 was due from him to the United States, and at the same time peremptorily demanded that he at once pay the same into the treasury of the United States. (5) On April 11, 1893, said Morton, solely on account of said peremptory notice and demand, paid said sum of $371.20 to the treasurer of the United States, but under protest to the treasurer of the United States that the said sum of money was his own, and not the property of the United States. Judge Baker's opinion is reported in 59 Fed. 349.

The second and ninth sections of the act of March 3, 1891 (26 Stat. 826), whereby the circuit courts of appeals were established, contained the following provisions:

"Sec. 2. * * * The court shall appoint a clerk, who shall perform and exercise the same duties and powers in regard to all matters within its jurisdiction as are now exercised and performed by the clerk of the supreme court of the United States, so far as the same may be applicable. * * * The salary of the clerk of the court shall be three thousand dollars a year, to be paid in equal proportions quarterly. The costs and fees in the supreme court now provided for by law shall be costs and fees in the circuit courts of appeals; and the same shall be expended, accounted for, and paid over to the treasury department of the United States in the same manner as is provided in respect to the costs and fees in the supreme court."

"Sec. 9. * * * That the marshals, criers, clerks, bailiffs and messengers shall be allowed the same compensation for their respective services as are allowed for similar services in the existing circuit courts."

In respect to fees, section 823 of the Revised Statutes provides that "the following and no other compensation shall be taxed and allowed" to officers named, including clerks of the circuit and district courts. Section 828 prescribes the fees of clerks. And section 839 provides as follows: "No clerk of a district court, or clerk of a circuit court, shall be allowed by the attorney-general * * * to retain of the fees and emoluments of his office, or, in case both of said clerkships are held by the same person, of the fees and emoluments of said offices, respectively, for his personal compensation, over and above his necessary office expenses, including necessary clerk hire, * * * a sum exceeding thirty-five hundred dollars a year for any such district clerk or for any such circuit clerk," etc. By section 840 the clerks of the several circuit and district courts of California, Oregon, and Nevada are declared entitled to charge and receive double the fees and to retain double the amount allowed to other clerks.

The fees to be charged by the clerk of the supreme court are prescribed by the seventh subdivision of rule 24 of the rules of the supreme court. 3 Sup. Ct. xiii. This was done by authority of an act passed March 3, 1883, which contains also the following provision: "The clerk of the supreme court of the United States shall not hereafter retain of the fees and emoluments of his office for his personal compensation, over and above his necessary clerk hire, and the incidental expenses of his office certified to by the court, * * * and audited and allowed by the proper accounting officers of the treasury, a sum exceeding six thousand dollars per year, or exceeding that rate, for any time less than a year; and the surplus of such fees and emoluments shall be paid into the treasury as provided by law in cases of clerks of the circuit and district courts of the United States." 22 Stat. 631. And in the act of 1884 it is further provided: "The clerk of the supreme court of the United States shall, on the first day of January next, or within thirty days thereafter, and annually thereafter, make to the secretary of the

treasury a return of all costs collected by him in cases disposed of at the preceding term or terms of said supreme court; and after deducting his compensation as provided by law, and the incidental expenses of his office, including clerk hire, said expenses to be certified by the chief justice or a justice of said court, shall pay any surplus that may remain, into the treasury of the United States, at the time of making said return." 23 Stat. 224.

Frank B. Burke, U. S. Dist. Atty., and Edwin Corr, Asst. U. S. Dist. Atty.

Addison C. Harris and Linton A. Cox, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge (after making the foregoing statement). By the second section of the act establishing the circuit courts of appeals the clerks of those courts are given a salary of $3,000 a year each, and by the ninth section it is provided that they shall be allowed "the same compensation for their respective services as is allowed for similar services in the existing circuit courts"; and the question presented is of the proper construction of the latter provision. In the opinion of the district judge it is said:

"Counsel for the petitioner contends with great earnestness that the clerk is entitled to the salary provided for in section 2, and, in addition thereto, to retain out of the fees and emoluments of his office the same amount which clerks of existing circuit courts are allowed to retain. The district attorney, on the other hand, insists that he is only entitled to his salary of $3,000 a year; and that the last paragraph of section 9 only relates to such incidental expenses of the court and its officers as the marshal is authorized to pay, and has no relation to the compensation of the clerk for his services. Sections 2 and 9 ought to be so construed as to give full effect to the language of each. They ought not, however, to be construed, unless incapable of other construction, in such a manner as to give the clerk of the circuit court of appeals the salary provided for in section 2, and also the right to retain, in addition thereto, the same amount out of the fees and emoluments of his office as is allowed in the case of the clerks of the circuit courts. Such a construction would result in double compensation. It would make his compensation larger than that received by the clerk of the supreme court of the United States, and nearly twice as large as that received by the clerks of the circuit courts. It cannot well be doubted that no such result was contemplated by the framers of the statute. Still, if the language employed necessarily forbids any other construction than one leading to such a result, it would be the duty of the court to adopt and enforce that construction. I think the apparent conflict may be reconciled by regarding section 9 as fixing the full measure of compensation which such clerk is entitled to receive. This section enacts that the clerk of the circuit court of appeals shall be allowed the same compensation for his services as is allowed for similar services in the existing circuit courts. It may be suggested that this provision was intended to fix the fees which may be lawfully taxed and collected as between the clerks and the litigants, and not as providing for the disposition of the fees when collected. This construction would make the compensation of the clerk the amount of his salary, and no more. I am not, however, disposed to adopt this construction, because the statute declares that he shall be allowed the same compensation for his services as is allowed for similar services in the existing circuit courts. This, in my opinion, was intended to fix the limit of his compensation. He is to be allowed for his services the same compensation as is allowed to the clerks of existing circuit courts for similar services. The clerks of existing circuit courts are entitled to receive, for all services rendered by them, $3,500 a year. If the clerks of the circuit courts of appeals are to receive the same compensation as clerks of existing circuit courts for similar services, then they cannot receive a larger sum for

all services rendered by them than $3,500 a year. The clerks of the circuit courts receive their compensation out of the fees and emoluments of their offices, which they are allowed to retain without covering the same into the treasury. The method in which their compensation is paid is not material. The fees are collected under authority of law, and they belong to the United States as much as though they had been covered into the treasury. In my opinion, the clerk of the circuit court of appeals is entitled to the same compensation as the clerks of the existing circuit courts; that is to say, $3,500 a year, and no more."

It is plain that it was not intended by section 9 "to fix the fees which may be lawfully taxed and collected as between the clerks and the litigants," because it is declared in section 2 that the costs and fees in the supreme court shall be the costs and fees in the circuit courts of appeals. It is, therefore, from costs and fees taxed and collected in accordance with the rule of the supreme court, that the fund in the hands of a clerk of the circuit court of appeals must be derived. That fund, it is provided in section 2, shall be expended, accounted for, and paid over to the treasury department in the same manner as is provided in respect to the costs and fees in the supreme court. Out of the costs and fees in the supreme court the clerk of that court is authorized to deduct his compensation, not exceeding $6,000 a year, and the incidental expenses of his office, including clerk hire, and is required to pay any surplus that may remain into the treasury of the United States. In harmony with this are the provisions of the 9th section of this act, and of the 839th section of the Revised Statutes, whereby the clerks of the circuit courts of appeals are allowed the same compensation for their services as are allowed to clerks of the circuit courts for similar services, and the latter are authorized to retain of the fees and emoluments of their offices (derived from fees taxed and collected under section 828), for compensation over and above necessary office expenses, including clerk hire, a sum not exceeding $3,500 a year.

A comparison of the fees and costs in the supreme court, as fixed by the rule of the court, and the fees of the clerk of the circuit court, as fixed by section 828 of the Revised Statutes, will show that they are in many respects essentially different, and consequently that the aggregate of the fees and costs collected by the clerk of a circuit court of appeals will probably be different from the aggregate of compensation for services allowed by section 9, when taxed in accordance with section 828. We agree with the judge below that sections 2 and 9 should be so construed as to give full effect to the language of each; but we do not think that it should be assumed that a construction which would give a clerk the salary provided in section 2, and also the right to retain the same amount out of the fees and costs collected as is allowed in the case of the clerks of the circuit courts would result in double compensation. A new system of courts of high dignity was being established,—higher than the circuit courts, and inferior only to the supreme court,—which were to be held in the largest cities of the land; and it seems to us that the plain intention was that the chief officers of these courts, without regard to the amount of business done in them, should receive the salaries granted by section 2, and in addition, and in proportion to the work

done, like criers, bailiffs, and messengers, should each receive the same compensation for services performed as is allowed to clerks of the circuit courts for similar services. The words "respective services" are used to distinguish between the different classes of officers named, while the words "similar services" and the fact that criers, bailiffs, and messengers are included show that this provision has reference not to annual compensation, but to compensation for distinct acts of service, for which a charge should be made in accordance with section 828 against the fund derived from the fees and costs collected in accordance with the rule of the supreme court. We perceive no "apparent conflict" between the sections which needs to be reconciled by regarding section 9 as fixing the full measure of the compensation which a clerk of the circuit court of appeals is entitled to receive. If it had been intended to allow, in addition to salary, a compensation for services not exceeding the sum of $500, it is to be presumed that plain words to that effect would have been used. Sections 2 and 9 are clearly and distinctly expressed; one giving a salary, which is to be paid out of the national treasury; and the other giving compensation for services done, to be paid out of the fund derived from costs and fees collected, and to be applied, first, to the expenses of the office, and then, if there be a surplus, to personal use.

By section 841 of the Revised Statutes, marshals are allowed to retain for personal compensation as much as $6,000 a year; and the same construction which gives to a clerk of the circuit court of appeals $500 in addition to his salary of $3,000 would give the marshal of that court $3,500 in addition to his salary of $2,500. The marshal, it is true, if the office had been continued, would have few writs to serve and no sales to make, and therefore could earn but little beyond the per diem of $5 for attending the court. So, too, according to the showing of this record, the compensation of the clerk under section 9 is likely to be much less than $3,500; but the question for the court is not what will be the practical result, but what is the proper interpretation of the statute. Congress, doubtless, in view of the fact that the marshal would have little to do except to attend the sessions of the court, made his salary less than that of the clerk; and it can hardly be a proper construction of section 9 which will make his entire compensation possibly greater than that of the clerk. A provision on the subject in the legislative appropriation bill passed July 31, 1894 (St. 53d Cong. 2d Sess. p. 203), has perhaps made the question unimportant for the future. What significance should be given to that enactment as a legislative interpretation of the act in question need not be considered. It would seem to be an amendment rather than an interpretation. The rights of the appellee should not be affected by an act (which is the act of his adversary in the suit) passed since the suit was commenced.

While we are not ready to commit ourselves to the opinion of the court below that under section 9 the appellee could receive no more than $500, and decide nothing on that point, the amount in controversy being less than that sum, we are clear that the judgment should be affirmed.

Section 15 of the act under which the suit was authorized to be brought in the district court provides that, if the United States puts in issue the right of the claimant to recover, the court may, in its discretion, allow costs to the prevailing party.

The judgment is therefore affirmed, at the costs of the appellant.

JENKINS, Circuit Judge. I assent to affirm the judgment below. I am, however, constrained to withhold concurrence in the construction apparently placed upon section 9 in the opinion of the court. It is manifest, as stated by the court, that that section does not refer to the fees to be collected by the clerk, because by section 2 such fees are gauged by a different standard. But I cannot concur that the words "similar services" prevent reference of this provision to annual compensation, and require it to be applied to distinct acts or services. The provision is "that the marshal, criers, clerks, bailiffs, messengers, shall be allowed the same compensation for their respective services as are allowed for similar services in the existing circuit court." The reference is to five distinct classes of officers, and the thought was, as I conceive, to measure the extent of compensation of each class by the compensation of such class in the circuit courts; and that the term "similar services" refers to the nature of service rendered by the respective officers named. In other words, I concur with the court below in the opinion that the intent of the statute was that the clerk should receive an annual salary of $3,000, and, in the contingency that the fees and emoluments of his office should warrant it, then he should be permitted to retain from the amount of fees received an amount as additional salary or compensation not exceeding $500; placing him, as to compensation, in that respect upon the same footing with the clerk of the circuit court.

By the appropriation act of 1894, referred to in the opinion of the court (chapter 174, p. 203), compensation is provided "for nine clerks, at $3,000 each: * * * provided, that said clerks shall make annually, within thirty days after the 30th day of June, to the secretary of the treasury, a return of all costs collected by them in cases disposed of during the preceding year by said court, and after deducting the incidental expenses of their respective offices, including clerk hire and their compensation as provided by section 9 of the act of March 3, eighteen hundred and eighty-one, establishing the circuit courts of appeals, not exceeding five hundred dollars, said expenses to be certified by the senior circuit judge of the proper circuit, shall pay any surplus of such costs with him remaining, into the treasury of the United States at the time of making said return." This legislative construction of the act, under a familiar principle, is entitled to great, if not controlling, weight with the courts in the determination of the legislative intent. City of Superior v. Norton, 63 Fed. 357–363. All statutes, says Lord Mansfield, which are in pari materia, are to be taken together as if they were one law. Per Chancellor Kent, Rogers v. Bradshaw, 20 Johns. 744. It does not matter about their date when the object of the court is to get at any provision, because a consistent, harmonious, single spirit and policy are presumed to govern statutes relating to one subject-matter.

1 Kent, Comm. 463; Potter's Dwar. St. 189, and authorities cited in note 9, and page 145, rule 17; Smith, Com. § 639 et seq.

In Alexander v. Mayor, etc., 5 Cranch, 1, Chief Justice Marshall observed:

"If, in a subsequent clause of the same act, provisions are introduced which show the sense in which the legislature employed doubtful phrases previously used, that sense is to be adopted in construing those phrases. Consequently, if a subsequent act on the same subject affords complete demonstration of the legislative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorporated into the foregoing act, is a direction to courts in expounding the provisions of the law."

Within these principles, if the statute in question be of doubtful construction, I am of opinion that we should adopt that rendering of its language which has been sanctioned by the subsequent act of congress.